# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CRIMINAL NO. 08-30003-WDS ) |
| TYRONE JACKSON, | ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court are multiple motions filed by the defendant Tyrone Jackson, pro se, all asserting the same basis for relief, that the Court erred when it allowed the Court's Director of Information Technology, Tom Galbraith, to take a laptop computer into the jury room and demonstrate its use during the jury's deliberations in the trial of this matter. The motions filed by defendant Jackson are:

1. Motion for declaration of a mistrial (Doc. 118);

2. Motion to dismiss and to declare a mistrial (document entitled "Conclusion) (Doc. 119);

3. Motion to Set Aside Judgment (Doc. 125);

4. Motion to Dismiss (Doc. 127);

5. Motion to Dismiss (Doc. 154).

6. Motion for Reconsideration of Order on Motion for Issuance of Subpoenas (Doc. 160).

The Court held an evidentiary hearing on the motions and took them under advisement.

At the hearing the Court heard the argument of the parties and the testimony of Tom Galbraith. Subsequent to the hearing, defendant Ladd has filed a document entitled "Clarification and Objection" in which she indicates that she does not join in the motions filed by defendant, or in his oral motion for substitution of judge, which was denied by the Court

    A.    Testimony at the hearing.

        1.    Court's questions to Galbraith.

The Court received the testimony of Thomas Galbraith who stated that on July 18, 2008, the day that the jury deliberated, at the request of the Court, he brought a new, unused court laptop to the courtroom for the jury to use during its deliberation. Galbraith is the Court's Director of Information Technology. The Court asked him a series of questions and then the parties were allowed to question him on the events of the time in question.

Galbraith stated that on the afternoon of July 18, 2008, he was called by the Court's courtroom deputy to bring a laptop for the jury to use during their deliberations to watch DVD excerpts of recorded transactions which had been admitted into evidence during the trial.[1] He went into the jury room and explained how to use the laptop. He did not ask the jurors any questions about their deliberations, nor were there any questions from the jury other than those directly related to the operation and functioning of the laptop.[2] He testified that the computer used was a Dell, Insperion laptop, with a DVD player. Although the laptop had wireless capabilities, those were, as in all court laptops, disabled by default, and therefore, the jury could

---

[1]These exhibits were Government's Exhibits 2 and 60.

[2]One of the jurors was computer savvy and indicated, after basic instructions from Mr. Galbraith, that he understood how to use the computer, including how to operate it for the review of the DVDs.

not access the Internet in the jury deliberation room.[3]

During the trial the defendant did not object to the use of the laptop by the jury, and also specifically approved of the decision to allow the jury to review this evidence in that manner.

2.     Parties' questioning of Galbraith.

Defendant Jackson questioned Galbraith at length about the instructions he received from the Court and how Galbraith may have followed those instructions. In particular, the Court, in instructing Galbraith on July 18, 2008, stated the following: Galbraith was specifically directed by the Court that he was to "go in and set this [tape] up for the jury and then[,] of course[,] leave the jury room once they start playing it." (Tr. Excerpt Vol. IV p. 3 - Doc. #131) That directive was further emphasized when the Court, upon the government's suggestion, made it clear that Galbraith was not to "talk to the jurors about anything. . . just don't say anything, just play it, then wait for a question." (*Id*. at 4). The defendant attempted to make this apparent conflict in directions the touchstone of his motions. He questioned Galbraith at length about how he could know what set of instructions to follow – to go into the jury room and say nothing, and also to "wait for questions." Galbraith testified as to his understanding of the instructions he was given, which was that he was to, "set up the laptop with the video, providing them the capability with operating that machine. . ." (12-12-2008 Hearing, Tr. p. 29) and meant that "in the event that they have any issues with playing [the video], I can make myself available." (*Id.* at 38). Galbraith summarized his participation on July 18th as follows:

---

[3]The defendant questioned Galbraith at length about the security on the laptop and its wireless capabilities. The Court is fully persuaded that this laptop as configured, could not have been used by the jury to access the Internet and that there was no possibility of impropriety or outside influence with that aspect of the use of the laptop. The Court is further persuaded that there was nothing, other than the exhibits in question, that was on the laptop and, therefore, available to the jury.

3

> What I did do was walk into the room, set the laptop on the table, showed them, explained to them that I'm going to give you this laptop that has a video on it, here's how to play the video, here's how the stop the video, here's how to play the second video, here's what you do in the event that you inadvertently close the video. That's the extent of the conversation I had. That was the extent of my interaction. Whether or not they were deliberating, I don't know. I mean when I walked in there was nothing being said, they looked at me, they watched me demonstrate how to play the video, they said thank you, and I left.

(*Id.* at 40). The Court specifically asked Galbraith whether he was asked by anyone to place any information or notes or other materials (other than the videos) on the laptop before it went into the jury room; whether he did anything like that on his own, and whether he asked the jurors any questions, or whether they asked him any questions other than how to operate the laptop. Mr. Galbraith testified, "No," to each of these questions, and the Court **FINDS** his testimony to be fully credible.

B. Discussion

The defendant's motions each seek relief based upon his belief that the mere presence of Galbraith violates Fed. R. Crim. P. 6(d)(2). That rule, which governs matters before the grand jury, provides, "No person other than the jurors, and any interpreter needed to assist a hearing-impaired or speech-impaired juror, may be present while the grand jury is deliberating or voting." The defendant asserts that as a consequence of the fact that the Court allowed Galbraith to enter the jury room, Jackson is entitled to dismissal of the case, and/or to have the judgments of conviction vacated.

The defendant sought to subpoena the jurors to testify at this hearing, which the Court denied in its Order at Doc. 157. The Court notes that there is a strong presumption against

4

calling jurors to testify. "Due process does not require a new trial every time jurors have been placed in a potentially compromising situation." *Arreola v. Choudry,* 533 F.3d 601, 605 (7th Cir. 2008). Rule 606(b) of the Federal Rules of Evidence provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

In this case, there was nothing, (other than the defendant's presumption that mere presence constituted plain error,) which would have warranted the Court granting his motion for subpoenas and calling the jurors in this case to testify at the hearing. The Court **FURTHER FINDS** that there was nothing presented at the hearing on this matter which would warrant further hearing, including calling any jurors to testify. Galbraith testified that the jurors did not actually deliberate or discuss the case during his presence, and the only discussion which occurred involved the functioning of the laptop. Therefore, the Court **FINDS** that there was no improper influence or presence of anyone in the deliberation room during the jury's deliberation. Defendant's motion for reconsideration of the Order at 157 denying his motion for issuance of subpoenas to the jurors is, accordingly, **DENIED**.

Galbraith was present in a purely technical capacity to assist the jury in using a laptop. He did not overhear, participate or prompt any part of the deliberative process. The laptop could

not be used to access the Internet, and nothing other than the videos that had been admitted into evidence were available for the jury to review on the laptop. The Court **FINDS** that this situation was merely technical, and that there was no "chilling effect" on the jury's deliberations. *United States v. Dempsy,* 830 F.2d 1084, 1090 (7th Cir. 1987). The mere presence of Galbraith, as a technical assistant, did not "inhibit the frankness of the discussion and deprive the eventual verdict of legitimacy." *Id.* Galbraith's presence was necessary for the jury's instruction in the use of the laptop to review the evidence in this case as part of its deliberations. He did not participate in the deliberative process in any manner. Accordingly, the Court **DENIES** on all grounds defendant Jackson's Motion for declaration of a mistrial (Doc. 118); Motion to dismiss and to declare a mistrial (document entitled "Conclusion) (Doc. 119); Motion to Set Aside Judgment (Doc. 125); Motion to Dismiss (Doc. 127); Motion to Dismiss (Doc. 154); and, Motion for Reconsideration (Doc. 160).

The Court **FURTHER DENIES** as moot defendant's motion to withdraw notice of appeal (Doc. 139). The Court of Appeals has granted a similar motion filed with that Court (See, Doc. 149).

**IT IS SO ORDERED.**

**DATED: December 22, 2008.**

                                        **s/ WILLIAM D. STIEHL**
                                            **DISTRICT JUDGE**